IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PRINCE UCHENNA OBIFUELE          *
    Plaintiff
                                 *      CIVIL NO. SKG-04-3839
    V.
                                 *
1300, LLC (d/b/a IVY HALL
GERIATRIC AND REHABILITATION     *
CENTER)
    Defendant                    *

*    *    *    *    *    *    *    *    *    *    *    *    *


MEMORANDUM OPINION


Defendant filed a motion seeking an award of attorneys' fees as the prevailing party pursuant to 42 U.S.C. § 1988(b). (Paper No. 44-2). The motion is fully briefed. No hearing is necessary. Local Rule 105.6. For the reasons discussed below, defendant's motion is GRANTED. The Court hereby orders plaintiff under 42 U.S.C. § 1988(b) and counsel under 28 U.S.C. § 1927 and alternatively under Rule 11 of the Federal Rules of Civil Procedure and/or the Court's inherent authority to pay defendant $22,600.75 in attorneys' fees, as a joint and several liability.

I.    Background

Plaintiff filed a pro se complaint alleging unlawful discrimination on the basis of race and national origin on December 6, 2004. (Paper No. 1).

On February 4, 2005, defendant filed a motion to dismiss, or

1

in the alternative, motion for summary judgment.  (Paper No. 7).
Plaintiff obtained counsel, who filed an appearance with the
court on March 27, 2005. (Paper No. 12).  On April 8, 2005,
plaintiff filed a response to defendant's motion and an amended
complaint.  (Paper No. 16-8).

Before the motion was fully briefed, Judge Davis denied the
motion to dismiss or, in the alternative, motion for summary
judgment, because resolution of the motion before discovery would
not be proper "as the motion was one for summary judgment, not a
proper 12(b)(6) motion to dismiss." (Paper No. 22).  However,
Judge Davis noted that "[i]f in fact the true purpose of the
motion is to alert plaintiff's counsel to the manifest lack of
merit in the case, that purpose may have been achieved, but I
cannot fault plaintiff's counsel for insisting (as I presume he
will) that he needs discovery fully to assess his
responsibilities under FED. R. CIV. P. 11." (Paper No. 22).

Discovery commenced.  Plaintiff did not take any
depositions, request any documents, serve any interrogatories, or
conduct any other discovery on his behalf.  Plaintiff did not
respond to defendant's document requests and interrogatories.  On
July 14, 2005 and July 21, 2005, counsel for defendant tried to
contact plaintiff's counsel, Mr. Silverstein, to determine the
status of the discovery requests.  (Paper No. 28 at 2, Exh. 3).
Defendant did not receive any response from Mr. Silverstein until

July 27, 2005, when a representative of the counsel telephoned and said the responses to discovery would be provided that afternoon. (Paper No. 28-2 at Exh. 4). However, no responses were provided. Finally, on August 4, 2005, defendant filed a motion to compel responses to discovery. (Paper No. 28-2). Plaintiff did not respond to the motion. On September 1, 2005, the Court held a telephone hearing on the motion. (Paper No. 30). At the hearing, plaintiff promised to respond to the discovery requests shortly. (Paper No. 30).

The Court ordered plaintiff and his counsel to reimburse defendant $1,287.00 by September 13, 2005 for its reasonable expenses associated with the motion to compel. (Paper No. 31). However, neither plaintiff nor counsel reimbursed defendant. As a result, defendant filed a motion for default judgment on October 14, 2005. (Paper No. 35). No response to the motion was filed. At the December 1, 2005 telephone hearing, counsel for the plaintiff indicated he would reimburse defendant the next day.

On October 20, 2005, defendant filed a motion for summary judgment. (Paper No. 37). Plaintiff did not respond to the motion. On November 16, 2005, the Judge's assistant telephoned counsel for the plaintiff to determine if a response would be filed. She spoke with a representative of counsel, who indicated that she did not know the motion for summary judgment had been

filed, and would file a motion for extension that afternoon.

However, no motion for extension was filed by counsel for the

plaintiff.

On December 1, 2005, the Court held a telephone hearing

concerning the motion.  Mr. Silverstein participated in the

hearing, but neither argued that the motion should be denied nor

offered any additional evidence in support of the case.  After

reviewing the motion on its merits, the Court granted the motion

for summary judgment.  (Paper No. 42).

II.  <u>Discussion</u>

Defendant contends that an award of attorneys' fees is

appropriate under 42 U.S.C. 1988(b) because plaintiff's complaint

was frivolous.  (Paper No. 44-2).  Plaintiff responds that he

produced in discovery ample documentation of discriminatory

treatment and of his exemplary service during his employment.

(Paper No. 51).

The Court believes that sanctions against counsel for the

plaintiff under 28 U.S.C. § 1927 may be appropriate as well

against the plaintiff, under the circumstances.[1]  FED. R. CIV. P.

11.  Counsel for the plaintiff was put on notice that the Court

<u>sua sponte</u> might impose sanctions against him pursuant to § 1927

---

[1] Counsel may also be liable for attorneys' fees pursuant to Rule
11 or under the Court's inherent authority.  Since the Court has
determined that § 1927 affords the appropriate basis for an award, the
Court awards sanctions under these bases only in the alternative.

4

on March 22, 2006 and provided an opportunity to address the
Court on the issue. (Paper No. 56). Mr. Silverstein, counsel for
the plaintiff, did not submit any memorandum on this sanctions
issue.

    A.   Attorneys' Fees Award under 42 U.S.C.A. § 1988(b)

    The Court may in its discretion award attorneys' fees to the
prevailing defendant. 42 U.S.C.A. § 1988(b).[2] The standard is
appropriately high. A fee award to the prevailing defendant is
made only where the plaintiff's action was frivolous,
unreasonable, or without foundation. Christianburg Garment Co.
v. EEOC, 434 U.S. 412, 422 (1978); Lotz Realty Co., Inc. v. U.S.
Dept. of Housing & Urban Development, 717 F.2d 929, 931 (4th Cir.
1983).

    A claim is "frivolous" if plaintiff failed to present any
credible evidence to support his claim or if he has gone forward
on the basis of no colorable legal theory. Bass v. E&I DuPont de
Nemours & Co., 324 F.3d 761, 766 (4th Cir. 2003); Arnold v.

---

    [2] While the appropriate statute to recover fees for actions under
Title VII is 42 U.S.C. § 2000e, Arvinger v. Mayer and City Council of
Maryland, 31 F.3d 196, 200 n.* (4th Cir. 1994), because the same
standard is at issue under either statute, the Court finds defendant
did not err by seeking fees under 42 U.S.C. 1988(b). See William v.
County of Fairfax, 1998 WL 708694, *3 n. 4 (4th Cir. 1998)
(unpublished) (Title VII fees should be awarded pursuant to § 2000e-5
not under § 1988, but error is harmless); Certain v. Potter, 330
F.Supp.2d 576, 581 (M.D.N.C. 2004) (fees may be awarded under Title
VII either pursuant to Section 1988 or 2000e-5); Abrahamson v. Board
of Education of Wappingers Central School District, 237 F.Supp.2d 507
(S.D.N.Y. 2002)(The same standard applies to both § 1988(b) and §
2000e.)

Burger King Corp., 719 F.2d 63, 66-7 (4th Cir. 1983); Davis v. Target Stores Division of Dayton Hudson Corp., 87 F.Supp.2d 492, 494 (D. Md. 2000)(2000e); Gilyard v. South Carolina, 667 F.Supp. 266, 277 (D.S.C. 1985).  A showing of bad faith is not necessary. Christianburg, 434 U.S. at 422.

An assessment of frivolousness is best left to the sound discretion of the trial court after a thorough evaluation of the record and appropriate factfinding.  Arnold, 719 F.2d at 65-6. However, the trial court must not "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation."  Christianburg, 434 U.S. at 422 ("This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success... Decisive facts may not emerge until discovery or trial.").

In addition, while the mere failure to prosecute a claim has not been found a sufficient ground for attorneys' fees (although it strikes this judge that perhaps it should), the failure of a plaintiff to do so may be considered in connection with other bases for a fee award.  Compare Anthony v. Marion County Hospital, 617 F.2d 1164, 1170 (5th Cir. 1980)(failure to prosecute does not make claim frivolous) with Lucas v. Aetna Casualty & Surety Co., 552 F.Supp. 824 (D. Colo. 1982)(failure to

6

prosecute is grounds for fees when plaintiff acted to employ litigation process to harass defendant).

Here, plaintiff failed to present any credible evidence to support his claim.  The only evidence submitted to the Court by plaintiff throughout the course of litigation is his affidavit, which attests to his belief that his job performance was satisfactory and that he was treated differently than his co-workers.[3] (Paper No. 19).  However, plaintiff's conclusory belief, without additional, credible evidence, is insufficient. See Bass v. E&I DuPont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003)(award of fees to defendant was not an abuse of discretion when discrimination claims lacked any foundation in the record apart from her own conclusory assertions); Gilyard v. South Carolina, 667 F.Supp. 266, 277 (D.S.C. 1985)(Award of attorneys' fees was appropriate where only evidence presented was "[t]he plaintiff's belief that he was the victim of discrimination"). Moreover, the plaintiff had the opportunity to conduct discovery and gain additional supporting evidence, but chose to not do so.

_____

[3] In the affidavit, plaintiff stated:  "At no time in my employment did I engage in 'inappropriate' behavior including being rude to co-employees, failing to care for residents, touching female co-employees, sexually harassing female co-employee or interfering with any investigation regarding same.  At no point did I ever act unprofessionally toward the residents or the female co-employees.  Any complaints by female co-employees are bold-faced lies, and were found to be inconclusive by the Center.  I have been treated disparately from white employees who were not terminated, sometimes for much worse allegations.  I do have witnesses of previous employ with the Center, current employ and my brother, who still works for the Center." (Paper No. 19).

Plaintiff argues that his claims were at least preliminarily meritorious, because Judge Davis denied plaintiff's original motion for summary judgment. (Paper No. 22). A closer look at Judge Davis's order shows that the motion was denied because it was premature, as discovery was not yet complete. If anything, Judge Davis suggested plaintiff's complaint was insufficient, and that plaintiff should conduct additional discovery to support his allegations.

While plaintiff continues to claim that he has other supporting evidence, including evidence produced to defendant during discovery, none of this evidence was presented to the Court, either in connection with this motion or at any other appropriate time.

When this utter lack of specific factual evidence is viewed in connection with plaintiff's failure to prosecute his claim as discussed below, the Court hereby finds that plaintiff's claim was frivolous. As a result, the Court shall award reasonable attorneys' fees under § 2000(e).

B.   Counsel for Plaintiff's Liability for Fees

Fees may not be awarded against an attorney under either § 1988(b) or § 2000e-5. See Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1508-9 (10th Cir. 1996); Quiroga v. Hasbro, Inc., 934 F.2d 497, 504 (3d Cir. 1991); Williams v. County of Fairfax, 1998 WL 708694, *3 (4th Cir. 1998) (unpublished). However, the Court

may consider alternative theories of liability for assessing attorneys' fees against the attorney.  <u>Quiroga v. Hasbro, Inc.</u>, 934 F.2d 497, 504 (3d Cir. 1993); <u>Hammer v. Lake County</u>, 819 F.2d 1362, 1371 n. 15 (7th Cir. 1987)(Court may consider alternative theories of liability including the court's inherent authority, Rule 11, or § 1927).

The Court will consider whether counsel for plaintiff is liable on the following alternative grounds, under Fed. R. Civ. P. 11, 28 U.S.C. § 1927, or under the court's inherent authority.

    1.  <u>Section 1927 Fees</u>

Under 28 U.S.C. § 1927, any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[4]  Section 1927 focuses on the conduct of the litigation and not on its merits.  <u>DeBauche v. Trani</u>, 191 F.3d 499, 511 (4th Cir. 1999); <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 762,

---

[4] Sanctions may only be imposed under 28 U.S.C. § 1927 against counsel if notice is afforded along with an opportunity for counsel to respond to the argument. <u>See</u> <u>In re Cohen v. Fox</u>, 122 F.3d 1060 (4th Cir. 1990) (unpublished); <u>Jones v. Pittsburgh Nat'l Corp.</u>, 899 F.2d 1350 (3d Cir. 1990); <u>In re Glasco</u>, 321 B.R. 695 (W.D.N.C. 2005); <u>Balcar v. Bell and Associates, LLC</u>, 295 F.Supp.2d 635 (N.D. W.Va. 2003); <u>Ted Lapidus, S.A. v. Vann</u>, 112 F.3d 91 (2d Cir. 1997). A full evidentiary hearing is not required. <u>Cook v. American S.S. Co.</u>, 134 F.3d 771 (6th Cir. 1998).

Counsel for the plaintiff was put on notice that the court was considering imposing sanctions against him pursuant to § 1927 on March 22, 2006. (Paper No. 56).  Even though the Court granted counsel a week to respond to the notice, no response was submitted.

100 S.Ct. 2455 (1980).

Imposition of sanctions requires a showing of bad faith. Chaudry v. Gallerizzo, 174 F.3d 394, 411 n. 14 (1999); Brubaker v. City of Richmond, 943 F.2d 1363, 1382 n. 25 (4th Cir. 1991)(citing Baker Industries, Inc. v. Cerebrus Ltd., 764 F.2d 204, 208-9 (3d Cir. 1985)(must be finding of actions tantamount to bad faith)); Thomas v. Treasury Management Ass'n, Inc., 158 F.R.D. 364, 371 (D. Md. 1994).  Either objective or subjective bad faith must be found.  U.S. for Use and Benefit of Union Light and Power Co. v. Camco Construction Co., Inc., 221 F.Supp.2d 630, 634 (D. Md. 2002)(citing Kotsilleris v. Chalmers, 966 F.2d 1181, 1184 (7th Cir. 1992)).  Sanctions are warranted only if the attorney's conduct "manifests either intentional or reckless disregard of the attorney's duties to the court."  Higginbotham v. KCS Intern, Inc., 202 F.R.D 444 (D. Md. 2001) (citing Resolution Trust Corp. v. Dabney, 73 F.3d 262, 267 (10th Cir. 1995)).  See also Perkins v. Spivey, 911 F.2d 22, 36 (8th Cir. 1990)(party seeking sanctions may establish bad faith by showing "intentional or reckless disregard of the attorney's duties to the court.")

Section 1927 imposes a continuing duty upon attorneys to dismiss claims that are no longer viable.  See also Walter v. Fiorenzo, 840 F.2d 427 (7th Cir. 1988)(upholding sanctions under § 1927 against counsel who continued with counts after court

flagged deficiencies in the complaint on several occasions);
Macheska v. Thomson Learning, 347 F.Supp.2d 169 (M.D. Pa. 2004)
(bad faith is evident where counsel admitted his client's case
had no merit and yet failed to stay, terminate or withdraw as
counsel within a reasonable time thereafter); Williams v. Family
Dollar Services, Inc., 327 F.Supp.2d 582 (E.D. Va. 2004)(counsel
acted in bad faith by continuing suit after receiving notice of
plaintiff's pre-existing suit).

    "There is no doubt that, unlike Rule 11, § 1927 does
encompass inaction as a potential violation." Joseph, Sanctions:
The Federal Law of Litigation Abuse, § 23(A)(3)("As long as a
claim, defense or position remains in a lawsuit, it may become
the subject of discovery, trial preparation or motion practice by
adverse parties.  To the extent that any of these eventuates,
counsel may be subject to sanctions for having done nothing to
avoid the proliferation of the proceedings."). See also Lepucki
v. Van Wormer, 765 F.2d 86, 87 (7th Cir. 1985)(awarding sanctions
under § 1927 and Rule 11 against attorney who did not respond to
defendant's motion to dismiss, although he had moved for a motion
for extension of time to respond, and who did not appear for a
court ordered hearing).  However, not all inaction by counsel may
be grounds for sanctions.  Curtiss v. Key Bank of Western New
York, N.A., 137 F.R.D. 2, 3 (W.D.N.Y. 1991)(counsel for plaintiff
does not act unreasonably or vexatiously in not responding to

summary judgment motion).

In <u>Edwards v. General Motors Corp.</u>, 153 F.3d 242, 246-7 (5th Cir. 1998), the Fifth Circuit sanctioned counsel under § 1927 who acted vexatiously and wantonly by abandoning her client's case while at the same time refusing to let the case "die on the vine" by filing motions for extensions, seeking to postpone the trial, and filing exhibit lists.  Although the Fifth Circuit noted that counsel admitted knowing her client had no case as a matter of fact, "most compelling is her pattern of conduct in the district court:  That she never filed any substantive motions, never took any depositions, and never even responded to GM"s motion for summary judgment."  <u>Id.</u> at 246-7.

As discussed above, plaintiff's amended complaint was frivolous.  Counsel for the plaintiff was put on notice of the deficiencies in his case on May 3, 2005, when Judge Davis stated in denying defendant's motion to dismiss/motion for summary judgment, "If in fact the true purpose of the motion is to alert plaintiff's counsel to the manifest lack of merit in the case, that purpose may have been achieved, but I cannot fault plaintiff's counsel for insisting (as I presume he will) that he needs discovery fully to assess his responsibilities under FED. R. CIV. P. 11."  (Paper No. 22).

Thereafter, counsel took no action to prosecute his client's case.  He did not conduct any discovery or answer defendant's

discovery requests.  He did not respond to defense counsel's attempts to inquire about the status of the discovery requests. He did not respond to defendant's motion to compel or motion for default judgment.  Until the Court-ordered telephone hearing, plaintiff and his counsel did not pay the court-ordered discovery sanctions.  Perhaps most importantly, when counsel received defendant's motion for summary judgment, he did not respond to the motion or request leave of the court for additional time to address the motion, or indeed move to withdraw.

Counsel's actions and inactions compel the conclusion that counsel abandoned the matter, either because he was aware of the deficiencies in the case or for some other unknown reason. Counsel's actions are particularly vexing, because he could have withdrawn the complaint, voluntarily dismissed the action, or requested leave from the court to withdraw as counsel.  Instead, Mr. Silverstein allowed the action to continue for seven more months without taking <u>any</u> affirmative action.  Because of his reckless disregard for his obligations to his client, to the defendant and to the Court, the Court finds he was acting in bad faith.

As a result of his conduct, proceedings in the court have been multiplied to the detriment of the defendant and the Court. In addition to suffering the cloud of pending litigation for seven additional months, defendant had to retain an attorney to

conduct discovery, draft a motion to compel and a motion for sanctions, draft a motion for summary judgment, and attend several court hearings.  In addition, because of counsel's actions and inactions, the resources of the Court have been misspent and diverted from legitimate disputes.

To deter such litigation abuse in the future, counsel will be sanctioned under 28 U.S.C. § 1927.  Because the Court cannot determine whether the plaintiff or counsel is wholly responsible for the inappropriate litigation conduct, Mr. Silverstein and the plaintiff will be held jointly and severally liable for the award of reasonable attorneys' fees.

     2.  <u>Rule 11 Fees</u>

At issue is whether counsel for the plaintiff violated Rule 11 by filing the amended complaint (Paper No. 18) without a reasonable investigation into whether the allegations and other factual contentions had evidentiary support.

Rule 11 states in relevant part that

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances... the allegations and other factual contentions have evidentiary support, or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

FED. R. CIV. P. 11(b)(3).  "If, after notice and a reasonable

opportunity to respond, the court determines that subdivision (b) has been violated, the court may... impose an appropriate sanction." FED. R. CIV. P. 11(c).

Under this rule, before filing an amended complaint, counsel for the plaintiff must conduct a reasonable investigation into the factual and legal bases for the claim. Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir. 1987). Counsel's actions must be reviewed under an objective standard of reasonableness, In re Kuntsler, 914 F.2d 505, 518 (4th Cir. 1990), or whether a reasonable attorney in like circumstances would believe his actions to be factually justified. Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987).

"To be reasonable, the prefiling investigation must uncover some information to support the allegations in the complaint." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991). Accord Cleveland Demolition Co., Inc. v. Azcon Scrap Corp., 827 F.2d 984, 987 (4th Cir. 1987)(sanctions granted where position was conclusory, and counsel did not conduct any investigation other than interviewing a few witnesses; Chaplin v. DuPont Advance Fiber System, 303 F.Supp.2d 766 (E.D. Va. 2004), affirmed 124 Fed.Appx. 771 (4th Cir. 2005))(awarding Rule 11 sanctions against plaintiff's counsel when religious discrimination complaint did not allege that plaintiffs had requested an accommodation because of religion). If the

information uncovered by the investigation is sufficient to "draw a factual inference", "even a weak one" that the complaint's allegations are supported, counsel has acted reasonably. Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991).

Courts rely on a variety of factors to determine whether an investigation is reasonable, including the amount of time available to investigate the facts, the extent to which pertinent facts were in the possession of opponents or otherwise were not readily available to the presenter, the extent to which counsel relied upon his or her client for the facts underlying the pleadings, and the extent to which the presenter was on notice that further inquiry might be appropriate. FED. R. CIV. P. 11 Advisory Committee Note to the 1983 amendments; Gregory P. Joseph, Sanctions: the Federal Law of Litigation Abuse § 8(A) (3d ed. 2006).

In general, filing papers in "blind reliance" on a client's statements will not shield an attorney from liability. In re Kuntsler, 914 F.2d 505, 514 (4th Cir. 1990); Hendrix v. Napthal, 971 F.2d 398 (9th Cir. 1992)(same); Hilton Hotels Corp. v. Banov, 899 F.2d 40, 43 (D.C. Cir. 1990). If a reasonable inquiry would have demonstrated the client's assertions were untrue, or if other relevant documents and witnesses are readily available, it is unreasonable for counsel to rely exclusively on his client for

16

factual support.  See Lloyd v. Schlag, 884 F.2d 409, 412-3 (9th

Cir. 1989)(sanctions are appropriate where counsel solely relied

on client to support award of fees when an investigation into

accessible records would have uncovered that client did not have

a cause of action); Georgene M. Vario, Rule 11 Sanctions: Case

Law, Perspective and Preventive Measures at 314 (3d ed. 2004)

("[I]f an attorney fails to review relevant documents in the

public record or available to the client, or if an attorney fails

to interview witnesses, most courts will sanction the

attorney.").  "A reasonable inquiry into the facts will include

talking to witnesses brought to the attorney's attention by his

client's recital of the facts." Id. at 314.  Accord Muraoka v.

American Osteopathic Ass'n, 117 F.R.D. 616, 618 (N.D. Ill. 1987)

(holding that a friend of the plaintiff with knowledge of the

critical facts relating to standing was clearly a reasonable

person to interview prior to filing the complaint in the case).

However, counsel need not investigate facts solely in the control

of defendants.  Morda v. Klein, 865 F.2d 782, 785-86 (6th Cir.

1989).

     In addition, counsel should determine whether the client's

knowledge is direct or hearsay, and check closely the

plausibility of the client's account.  See Mike Ousley Prods.,

Inc. v. WJBF-TV, 952 F.2d 380, 382 (11th Cir. 1992).

     However, the amount of investigation required depends upon

the time available to conduct the investigation.  "An inquiry
that is unreasonable when an attorney has months to prepare a
complaint may be reasonable when he has only a few days before
the statute of limitations run."  Cooter & Gell v. Hartmarx
Corp., 496 U.S. 384, 401-02 (1990).  Accord Muraoka v. American
Osteopathic Ass'n, 117 F.R.D. 616, 618 (N.D. Ill. 1987)("In a
situation where a client comes to an attorney only weeks or days
before a statute of limitations begins to run, then much less of
a factual inquiry would be reasonable.")

> The stage at which the lawyer enters a case may have
> significant bearing on the extent of investigation that
> the lawyer is able or required to undertake.  If, for
> example, a lawyer enters a case shortly after a
> dispositive motion has been filed by an adversary, the
> lawyer's paramount concern will reasonably be to
> respond to the pending motion.  The lawyer will be
> obliged to conduct a reasonable investigation in the
> circumstances, and that may necessitate considerable
> reliance upon the work product of predecessor counsel
> or on the client.

Joseph, Sanctions: the Federal Law of Litigation Abuse § 8(A)(8).

Counsel for the plaintiff did not have a sufficient factual
basis to support his amended complaint for violations of Title
VII.  As discussed above, the only evidence presented to support
plaintiff's response to defendant's first motion for summary
judgment (Paper No. 16, 17, and 19) was plaintiff's conclusory
affidavit.  At no other time in the litigation has any additional
evidence been presented by counsel for plaintiff to support this
claim, even though counsel had been given an independent

18

opportunity to demonstrate he had a basis in fact for the complaint, in response to the motion for sanctions.

While no evidence has been presented on the investigation done by counsel prior to filing the amended complaint, counsel's prefiling inquiry could not have revealed any additional information, or it would have been relied on by the plaintiff. Chaplin v. Du Pont Advance Fiber Systems, 303 F.Supp.2d 766, 771 (E.D. Va. 2004), affirmed 124 Fed.Appx. 771 (4th Cir. 2005)(awarding Rule 11 sanctions because amended complaint did not contain factual foundation to support an allegation of discrimination by race, so "the prefiling inquiry could not have revealed otherwise.")  As a result, the Court has no evidence the counsel for the plaintiff conducted any investigation prior to filing the amended complaint, other than discussing the case with his client.

Counsel for the plaintiff acted unreasonably by not investigating other available evidence, including speaking to the plaintiff's brother, who allegedly witnessed some of the events. As discussed above, plaintiff lacked concrete information for many of his claims, having made only conclusory allegations. Moreover, at least some of his allegations were based on hearsay. For example, plaintiff lacked personal knowledge whether other employees were treated differently by defendant.

The Court acknowledges that counsel entered the case late,

and only had one month to respond to defendant's first motion for
summary judgment.[5]   However, during that month, counsel
apparently failed to conduct any meaningful investigation of his
client's claims,  Moreover, from defendant's motion for summary
judgment, counsel was put on notice that defendant disputed all
of the allegations and had proffered evidence that his client had
been fired for legitimate business reasons.   As a result, the
Court must conclude that counsel failed to conduct a reasonable
investigation before filing the amended complaint.[6]   Rule 11 thus
provides another alternative basis for imposition of a sanction
against counsel for the plaintiff for his misconduct.[7]

---

[5] Counsel for the plaintiff entered his appearance on March 7,
2005.  (Paper No. 12).  On that day, he filed a consent motion for an
extension of time to file a response to defendant's motion for summary
judgment.  (Paper No. 13).  The motion was granted.  (Paper No. 15).
On April 8, 2005, counsel filed an amended complaint and response to
motion for summary judgment. (Paper No. 16-19).

[6] "Conduct, *per se*, is not subject to Rule 11."  Georgene M.
Vario, Rule 11 Sanctions: Case Law, Perspective and Preventive
Measures at 227.  The only conduct sanctionable is the filing of a
signed paper judged to violate the objective standard of Rule 11 as of
the time that the paper was filed.  Pony Express Courier Corp. of Am.
V. Pony Express Delivery Serv., 872 F.2d 317, 319 (9th Cir. 1989);
Edwards v. General Motors Corp., 153 F.3d 242, 245 (5th Cir. 1998).
As a result, counsel for the plaintiff may not be sanctioned under
Rule 11 for failing to conduct discovery, failing to respond to any
substantive motions, and failing to respond to defendant's motion for
summary judgment.

[7] Before an award of sanctions under Rule 11, an order to show
cause must be entered, to provide counsel for plaintiff a chance to
respond.  This memorandum opinion and order shall act as a show cause
order, and plaintiff's counsel shall have one week after the date of
this order to file any opposition to the imposition of an award and
the amount.  The Court recognizes that Rule 11 is not a fee-shifting
statute.  Fees may only be awarded to the extent necessary to deter
future abuses.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990).

3. <u>Sanctions under the Court's Inherent Authority</u>

Federal courts possess inherent authority to sanction a litigant for bad-faith behavior and to regulate litigant's behavior.  <u>In re Weiss</u>, 111 F.3d 1159, 1171 (4th Cir. 1997). Sanctions under a court's inherent power may be imposed for abusive litigation practices in any proceeding, civil or criminal.  <u>Chambers v. NASCO Inc.</u>, 501 U.S. 32, 58, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  "Courts, therefore, have inherent discretion to impose sanctions, which are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  <u>Carefirst of Md, Inc. v. First Care, P.C.</u>, — F.Supp.2d —, 2006 WL 687176, *4 (E.D. Va. 2006) (quoting <u>Link v. Wabash R. Co.</u>, 370 U.S. 626, 630-1, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).  "Because the inherent power is not regulated by Congress or the people and is particularly subject to abuse, it must be exercised with the greatest restraint and caution, and then only to the extent necessary."  <u>United States v. Shaffer Equipment Co.</u>, 11 F.3d 450, 461-2 (4th Cir. 1993) (citing <u>Roadway Express v. Piper</u>, 447 U.S. 752, 764, 100 S.Ct.

---

In calculating the sanction, the purposes of Rule 11 should be considered, including "compensating the victims of the rule 11 violation, as well as punishing future litigation abuse, streamlining court dockets and facilitating court management."  <u>In re Kuntsler</u>, 914 F.2d at 522, Having considered these factors, the Court finds the appropriate award under Rule 11 is $22,600.75 - a large enough award to accomplish the rule's goals.

2455, 2463, 65 L.Ed.2d 488 (1980)).

The Court's power to issue sanctions under its inherent power is both broader and narrower than its authority to issue Rule 11 sanctions.  Unlike Rule 11, which focuses on specific abuses and is not limited to willful conduct, the inherent power reaches all litigation misconduct done in bad faith.  Chambers v. NASCO Inc., 501 U.S. 32, 58, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

Because the underlying rationale of inherent power sanctions is punitive, "a finding of bad faith is sine qua non to the imposition of inherent power sanctions."  Joseph, Sanctions: the Federal Law of Litigation Abuse § 27(A).  "There must be 'clear evidence' that the challenged actions are without color and [are taken] for reasons of harassment or delay or for other improper purposes."  Weinberger v. Kendrick, 698 F.2d 61, 80 (2d Cir. 1982).  As a result if a court finds "that fraud has been practiced upon it, or that a very temple of justice has been defiled, it may assess attorney's fees against the responsible party."  Chambers v. NASCO Inc., 501 U.S. 32, 46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).  The court may also assess attorney's fees "when a party shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order."  Id.

"Pursuant to its inherent powers, a court may impose sanctions against a plaintiff who has pursued a claim that is

deemed to have been vexatious, wanton, or made in bad faith."
Davis v. Target Stores Div. Of Dayton Hudson Corp., 87 F.Supp.2d
492, 494 (D. Md. 2000).  "The continuation of a claim which has
become frivolous has been held to amount to 'bad faith'
justifying a fee award."  Id.  In addition, "[i]f particularly
egregious, the pursuit of a claim without reasonable inquiry into
the underlying facts can be the basis for a finding of bad
faith."  Barnes v. Dalton, 158 F.3d 1212, 1214-5 (11th Cir.
1998).  In Barnes, sanctions were awarded under the Court's
inherent authority against an attorney who knowingly pursued a
frivolous claim.  "The Court must conclude from [the attorney's]
failure to adduce any evidence in opposition to Defendant's
summary judgment motion that neither of plaintiff's counsel ever
had such evidence.  Because [the attorney's] response to the
[motion for sanctions] contains no evidence to the contrary,
there is no weight to his argument that he filed the lawsuit in
good faith upon information from his clients."  Id. at 1214.[8]

    For the reasons discussed above, the Court finds that

---

[8] Other circumstances were a court has imposed sanctions under
its inherent authority include, failing to correct a litigation
position, once counsel learns that it is baseless, Gord v. Temple
Hosp., 790 F.2d 342, 350 (3d Cir. 1986), engaging in dilatory tactics
during discovery and courtroom proceedings, Lipsig v. National Student
Mktg. Corp., 663 F.2d 178, 181-82 (D.C. Cir. 1980), filing suit under
a false name to conceal one's true identity, Dotson v. Bravo, 321 F.3d
663 (7 Cir. 2003), and exposing a confidential settlement to public
view with the intention of embarrassing the other party, Toon v.
Wackenhut Correcctions Corp., 250 F.3d 950 (5th Cir. 2001).  However,
none of those circumstances appear to be at issue in this case.

counsel for the plaintiff filed an amended complaint in the action without conducting a reasonable inquiry into the factual basis for this claim.  This conduct is similarly sanctionable under the Court's inherent authority, as it is under 28 U.S.C. § 1927 and Rule 11, and alternately awards $22,600.75, under the Court's inherent authority.[9]

C. <u>Amount of Fee Award</u>

Defendant asks the Court to award $32,482.49 in attorneys' fees.  Plaintiff does not dispute that this fee award is reasonable.

However, the Court must conduct its own independent review of fee petitions for reasonableness using the twelve-factor reasonableness test set forward in <u>Johnson v. Georgia Highway Express</u>, 488 F.2d 714, 717-19 (5th Cir. 1974). <u>See</u> <u>Brodziak v. Runyon</u>, 145 F.3d 194, 196 (4th Cir. 1998) (fee award in Title VII case under 42 U.S.C.A. 2000e-5) (quoting <u>EEOC v. Service News Co.</u>, 898 F.2d 958, 965 (4 Cir. 1990)); <u>Daly v. Hill</u>, 790 F.2d

---

[9]"Due process requires, in the absence of extraordinary circumstances, notice and an opportunity to be heard before sanctions are imposed." <u>Sanctions: the Federal Law of Litigation Abuse</u> § 29(A). "Notice of due process entails awareness of (1) the fact that sanctions are under consideration; (2) the reasons why they are under consideration; and (3) the type of sanctions being considered." <u>In re Tutu Wells Contamination Litig.</u>, 120 F.3d 368 (3d Cir. 1997). Counsel was not put on notice that he may be subject to fees under the court's inherent authority prior to the filing of the opinion.  As a result, this memorandum opinion and order shall act as a show cause order, and plaintiff's counsel shall have one week after the date of this order to file any opposition to the imposition of an award and the amount.

1071 (4th Cir. 1986)(fee award under Section 1988).  The <u>Johnson</u> factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitation imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees in similar cases.

<u>Johnson</u>, 488 F.2d at 717-19.  However, only those factors relevant to the circumstances of the particular case need to be considered.  <u>EEOC v. Service News Co.</u>, 898 F.2d 958, 965 (4th Cir. 1990) (applying lodestar method to finding of attorneys' fees in Title VII case).

    1.  <u>Reasonable Hourly Rate</u>

The plaintiff is entitled to compensation at a reasonable hourly rate.  "This requirement is met by compensating attorneys at the 'prevailing market rates in the relevant community."  <u>Rum Creek Coal Sales Inc. v. Carperton</u>, 31 F.3d 169, 175 (4th Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 895 (1984)).  "The burden is on the fee applicant to produce satisfactory evidence ... that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." <u>Costar Group,</u>
<u>Inc. v. Loopnet, Inc.</u>, 106 F.Supp.2d 780, 787-788 (D. Md. 2000)
(quoting <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).  <u>The</u>
<u>Rules and Guidelines for Determining Lodestar Attorney's Fees in</u>
<u>Civil Rights and Discrimination Cases</u> of this Court (Appendix B
to Local Rules of the District of Maryland) "provide a
presumptively reasonable range of hourly rates in civil rights
and discrimination cases." <u>Poole v. Textron, Inc.</u>, 192 F.R.D.
494, 509 (D. Md. 2001).[10]

Defendant was represented by Kramon & Graham, P.A ("Kramon &
Graham").  Six individuals at Kramon & Graham worked on the
matter.  The Court will individually address the reasonable
hourly billing rate for each below, utilizing the presumptive
reasonable rates of the Local Rules, for discrimination cases,
such as this case.

Mr. Ulwick has been licensed to practice law in Maryland
since 1988.  Prior to August 1, 2005, his billing rate was
$425.00 an hour.  His rate increased on August 1, 2005 to $435.00
an hour.  Because of his many years of experience at the bar and

---

[10]  "While the Rules and Guidelines by their terms do not apply to
attorneys' fees requests in discovery disputes, the Court utilized
them here in light of the size of the attorneys' fee request." <u>Poole</u>
<u>v. Textron, Inc.</u>, 192 F.R.D. 494, 509 (D. Md. 2001).
    The guidelines provide the following presumptively reasonable
hourly rates:
$135-$170 – attorneys admitted to the bar for less than five years
$150-$225 – attorneys admitted to the bar between five to eight years
$200-$275 – attorneys admitted to the bar for more than eight years
$90 – paralegals and law clerks

his reputation in the community, the Court will allow the maximum suggested under the Local Rules, or $275.00 dollars per hour, for cases of this nature, and in the absence of any evidence of a higher market rate through affidavit, study, etc.

Mr. Brown was admitted to the bar in 1999.  Previously, in the discovery dispute award, the Court reduced Mr. Brown's hourly rate as of August 1, 2005 from $255.00 to $200.00 dollars per hour, "in recognition of his years at the bar."  (Paper No. 32 at 1).  For the same reasons, his rate for the same period will be reduced to $200.00 for the purposes of this motion.  Prior to August 1, Mr. Brown's billable rate was $225.00 dollars an hour.  For that time period, in recognition of his experience at the bar, his billable rate will be reduced by the same amount to $180.00 per hour.

Ms. Gibbs was admitted to the bar in 1993, and licensed to practice law in Maryland since 2003.  Prior to August 1, 2005, Ms. Gibbs earned $230.00 an hour.  Even though Ms. Gibbs has twelve years of practice as an attorney, because of her firm's assigned billing rate presumably reflective of the firm's opinion of the market value of her services, the Court hereby reduces Ms. Gibbs's billable rate from $230.00 to $190.00 per hour for the relevant time period.  Ms. Gibbs' billable rate increased to $240.00 on August 1, 2005.  For time entries after August 1, her billable rate will be reduced by the same amount to $200.00 an

hour.

Ms. Matzinger, Mr. Watcher, and Mr. Shea all assisted in Kramon & Graham's representation of defendant.  Ms. Matzinger billed her time at $135.00 per hour.  Mr. Shea and Mr. Watcher's billable rate is $125.00 per hour.  Because no documentation was provided about the credentials or role of these Kramon & Graham employees, their experience, or the typical billing rate in the Baltimore community, the Court will bill their time at $90 per hour, or the rate set by Appendix B of the Local Rules for paralegals and law clerks..

### 2.  Sufficient Documentation of Time Billed

The fee applicant bears the burden of establishing appropriate documentation of the hours spent by counsel litigating the discovery dispute.  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983).  The applicant must submit contemporaneous time records revealing how the hours were allotted to specific tasks, including, for each attorney, the dates, the hours expended, and the nature of the work completed.  Costar Group, Inc. v. Loopnet, Inc., 106 F.Supp.2d 780, 787-788 (D. Md. 2000).  If documentation is inadequate, the court may reduce the fee reward accordingly. Hensley, 461 U.S. at 433.

Billing records must contain sufficient detail for courts to conduct a meaningful review of the billing entries.  League of United Latin Am. Citizens v. Roscoe Indep. Sch. Dist., 119 F.3d

1228, 1233 (5th Cir. 1997).  <u>See also</u> <u>Tomazzoli v. Sheedy</u>, 804

F.2d 93, 98 n.5 (7th Cir. 1986) ("The billing records must be

sufficiently clear to enable the district court to identify what

hours, if any, are excludable because they are excessive,

redundant, or otherwise unnecessary.").  "At least counsel should

identify the general subject matter of the time expenditures."

<u>Costar</u>, 106 F.Supp.2d at 789 (citing <u>Hensley v. Eckerhart</u>, 461

U.S. 424, 433 (1983)).

        The bills submitted by defendant for Westlaw fees are unduly

vague.  The bills only list the total amount spent on the

services with no information provided on how much time was spent

using the service for what research, applicable to what issues or

motion and at what cost to the firm.  Without more information

about the Westlaw services, the Court denies reimbursement for

Westlaw.  The other items of expense will be allowed, as

appearing reasonable in light of litigation and filings.

        3.  <u>Reasonable Hours</u>

        The court must review the submitted entries for "billing

judgment", that is, exclusion of time that is "excessive,

redundant, or otherwise unnecessary."  <u>Costar Group, Inc. v.</u>

<u>Loopnet, Inc.</u>, 106 F.Supp.2d 780, 789 (D. Md. 2000) (quoting

<u>Hensley</u>, 461 U.S. at 434).  <u>See also</u> <u>Poole v. Textron</u>, 192 F.R.D.

494, 508 (D. Md. 2000).  A party fails to exercise billing

judgment when an inordinately large amount of time is spent on a

project.  See International Association v. Werner-Matsuda, 390

F.Supp.2d 479 (D. Md. 2005) ("[E]xperienced counsel should not

need quite so much time to research and draft the papers.");

Costar Group, 106 F.Supp.2d at 789 (use of some time on certain

tasks is appropriate, but amount expended here was unreasonable);

Broccoli v. Echostar Communications Corp., 229 F.R.D. 506, 513

(D. Md. 2005) ("[T]ime incurred unreasonably excessive given the

nature of the task.")

The Johnson factors provide guidance on what constitutes an

inordinately large amount of time.  However, only those factors

relevant to the circumstances of the particular case need to be

reviewed.  EEOC v. Service News Co., 898 F.2d 958, 965 (4th Cir.

1990) (applying lodestar method to finding of attorneys' fees in

Title VII case).  Here, the following Johnson factors are

relevant: (1) the time and labor expended; (2) the novelty and

difficulty of the questions raised; (3) the skill required to

properly perform the legal services rendered; and (4) the

attorney's opportunity costs in pressing the instant litigation.

In addition to examining the number of hours spent on a

matter, another consideration is the manner in which the case was

staffed.  An award of attorneys' fees may be reduced if an

unnecessarily large number of attorneys work on the matter,

because their involvement tends to generate a degree of overlap

or duplication of work.  See Goodwin v. Metts, 973 F.2d 378, 384

(4th Cir. 1992).

Moreover, fees associated with unreasonable amounts of times billed to internal conferences and other conferences among the parties are not recoverable.  Courts have reduced awards of attorneys' fees if an unreasonably high number of internal conferences are held.  <u>See</u> <u>In re Olson</u>, 884 F.2d 1415, 1429 (D.C. Cir. 1989).  Moreover, under this Court's guidelines, a party may only recover time that a single, participating attorney spent at intra-office conferences, client and third party meetings and in hearings.  <u>The Rules and Guidelines for Determining Lodestar Attorney's Fees in Civil Rights and Discrimination Cases of this Court</u> (Appendix B to Local Rules of the District of Maryland)[11].  <u>See also</u> <u>Broccoli v. Echostar Communications Corp.</u>, 229 F.R.D. 506, 513 (D. Md. 2005).[12]

---

[11] Fees may be awarded for the use of multiple attorneys during "periodic conferences of defined duration held for the purpose of work organization and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of the litigation." <u>The Rules and Guidelines for Determining Lodestar Attorney's Fees in Civil Rights and Discrimination Cases of this Court</u> (Appendix B to Local Rules of the District of Maryland).  However, because the purpose of the teleconferences were not recorded, the Court lacks sufficient information to conclude which, if any, of the meetings were held for this purpose.

[12] Under § 1988, another consideration is plaintiff's ability to pay the legal fees. <u>Bass v. E&I DuPont de Nemours & Co.</u>, 324 F.3d 761 (4th Cir. 2003); <u>DeBauche v. Trani</u>, 191 F.3d 499, 510 (4th Cir. 1999); <u>Arnold v. Burger King Corp.</u>, 719 F.2d 63, 66-7 (4th Cir. 1983).  Although this argument was not raised by plaintiff, the Court notes that on December 6, 2004, plaintiff filed an affidavit which stated that he was unemployed, had no current assets, and only received the following income in the past twelve months: $4,300.00 in worker's compensation.  (Paper No. 2).  No evidence has been presented to show plaintiff's current financial condition.  Of course, plaintiff's

In light of the aforementioned considerations, the Court reviewed the submitted time entries for reasonableness.  A detailed review of the time entries submitted by Kramon & Graham is available in the Appendix.

Between January 1 and November 30, 2005, Kramon & Graham billed 140.3 hours in the matter.[13]  The defendant submitted a computer printout for the relevant time period containing descriptive daily chronological billing records.  As required by The Rules and Guidelines for Determining Lodestar Attorney's Fees in Civil Rights and Discrimination Cases of this Court (Appendix B to Local Rules of the District of Maryland), defendant divided its time into the following categories:[14]

| Category | Time Billed |
|---|---|
| 1) Case Development, Background Investigation and Case Administration | 43.8 hours |
| 2) Motions Practice | 84.2 hours |
| 3) Interrogatories, Document Production, and Other Written Discovery | 8.9 hours |

prosecution caused defendant's expenditure of attorneys' fees, and it was plaintiff's frivolous prosecution of the case that has placed him in financial jeopardy.  The Court has considered these points, but has not reduced the award.  The plaintiff had the obligation to present his current financial status to the Court if he desired consideration.

[13] Defendant did not seek reimbursement for 18.1 hours billed by Kramon & Graham in December 2005.

[14] On occasion, time entries were placed in multiple categories. For example, on November 28, 2005 Mr. Brown categorized his billing entry as both 2) "motions practice" and 6) "hearing."  To prevent the time spent in these entries from being double counted, the Court will only review the time in a single category.  A complete listing of how each entry was categorized is available in the appendix.

| 4) Pleadings | 3.4 hours |
| 5) Fee Petition Preparation | 0 hours[15] |
| 6) Attendance of Court Hearings | *[16] |

Under the relevant <u>Johnson</u> factors, the overall time spent by defendant in the matter is reasonable.  During the relevant time period, counsel conducted discovery, drafted pleadings, and researched and drafted three substantive motions: a motion to dismiss or in the alternative summary judgment (Paper No. 7), a motion to dismiss amended complaint, or in the alternative, motion for summary judgment (Paper No. 21), and a motion for summary judgment (Paper No. 37).  While the motions did not involve any novel legal issues, counsel was required to master the facts, and then apply the appropriate law accordingly.  In addition, as discussed <u>infra</u>, counsel was required to devote time to attempt to convince plaintiff to answer its discovery requests and to seek the court-ordered sanctions which time counsel could have spent working on other matters.

The case was appropriately staffed.  The same partner and two associates worked continuously on the matter.  Each attorney

---

[15] As discussed <u>infra</u>, defendant did not seek reimbursement for any time billed in December 2005.  As a result, no entries have been placed in the Fee Petition Preparation category.

[16] Defendant placed three entries in (6) attendance of court hearings.  Because all of the three entries were also placed in a second category, no time is currently listed in the category.

performed work consistent with his or her position in the firm or relative experience.  On occasion, three support staff assisted with the representation.  While that number is somewhat high, because the support staff billed 5.2 hours total towards the matter, this not unreasonable.

Defendant voluntarily did not ask for reimbursement for the 18.1 hours billed in December of 2005, nor for any hours spent on the fee petition.  As a result, the Court concludes that counsel spent a reasonable amount of hours litigating the case in relation to the tasks at hand.

However, reductions are warranted on other grounds. First, defendant reduced its attorney fee request by $1,287, or the amount it previously received in attorneys' fee award. (Paper No. 32).  But the defendant did not eliminate all pertinent time entries from the submitted fee petition.  As a result, all time entries considered by the Court in connection with the prior motion for sanctions have been disregarded, as the Court did not award 100% of time documented.  (Paper No. 31, Exh. A). Moreover, on occasion, inconsistent with Appendix B to the Local Rules, multiple attorneys billed time for a single intraoffice teleconference.  As a result, all time entries containing multi-

attorney teleconferences will be reduced by 50%.[17]

After multiplying the reasonable hours against the reasonable hourly rate, the Court awards $22,600.75 jointly and severally against Mr. Silverstein and the plaintiff.

III.     Conclusion

The Court hereby awards defendant $22,600.75 in attorneys' fees jointly and severally against Mr. Silverstein and the plaintiff.


Date: 8/23/06                        /s/
                              Susan K. Gauvey
                              United States Magistrate Judge

---

[17] As discussed supra, Appendix B to the Local Rules provides that "only one lawyer shall be compensated for client and third party conferences." However, because counsel for defendant often combined multiple billing activities into one time entry, the court cannot just disregard the time entry of the less senior attorneys on the call without also disregarding the time spent by the attorneys doing other work. (E.g. Mr. Brown billed 2.1 hours on June 1, 2005 for the following tasks, "Final edits to discovery; analyze indemnification issues; review FutureCare operating agreement; telephone conference with Mr. Offutt regarding same; telephone conference with Mr. Klein regarding same.") Instead, the Court will reduce all time entries spent on the task by 50%.

46 billing entries contain time for intra-office conversations, conversations between the client and the firm and intraoffice memoranda. The entries total 32.8 hours (although that is a somewhat inflated figure due to some block bills), which compromises 20% of the total hours spent by K&G on this matter. Since the case took over a year, this probably is not an unreasonable amount of intra-office conferences. However, of those conferences, 14 took place between June 1, 2005 and June 27, 2005 for a total of 7.2 hours (or 100% of the time during that period -- again this number is somewhat inflated by the inclusion of two block bills, but not by much.